**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | No. 09-CR-10-LRR |
| vs. | | |
| LaDARRON DEONDRE PICKENS, a/k/a "Deondre Pickens," | | **ORDER** |
| Defendant. | | |

---

### *TABLE OF CONTENTS*

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  RELEVANT PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. TRIAL EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
  A.   Trooper Klosterboer Stops Defendant's Van . . . . . . . . . . . . . . . . . . 3
  B.   Troopers Klosterboer and Vander Wiel Inspect the Cargo . . . . . . . . 5
  C.   Agent Pettrone Interviews Defendant . . . . . . . . . . . . . . . . . . . . . . . 6
  D.   Agent Pettrone's Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.  MOTION FOR JUDGMENT OF ACQUITTAL . . . . . . . . . . . . . . . . . . . 8
  A.   Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
  B.   Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.   MOTION FOR NEW TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  A.   Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  B.   Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    1.   Whether the verdict is against the weight of the evidence . . . 13
    2.   Whether the use of "must" in the marshaling instruction
         was proper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    3.   Whether the court erred in refusing to instruct the jury
         regarding simple possession . . . . . . . . . . . . . . . . . . . . . . . . 16
    4.   Whether the court erred in not instructing the jury on
         punishment or the mandatory minimum sentence . . . . . . . . 17
  C.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VI.   *CONCLUSION*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**

## I.  INTRODUCTION

The matters before the court are Defendant LaDarron Deondre Pickens's Motion for Judgment of Acquittal (docket no. 39) and Motion for New Trial (docket no. 40) (together, "the Motions").

## II.  RELEVANT PROCEDURAL HISTORY

On March 4, 2009, a grand jury returned a one-count Indictment (docket no. 2) against Defendant. The Indictment charged Defendant with Possession with Intent to Distribute 100 Kilograms or More of Marijuana After Having Previously Been Convicted of a Felony Drug Offense, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

On April 23, 2009, the government filed an Information to Establish Prior Conviction (docket no. 16), pursuant to 21 U.S.C. § 851. The government alleged that, on June 5, 2008, Defendant was convicted of Possession of a Controlled Substance (Marijuana) in the Oklahoma District Court for Oklahoma County, Case No. CF-2008-2747, a violation of Okla. Stat. tit. 63 § 2-401 ("the Prior Conviction").

From May 4, 2009 through May 5, 2009, the court held a jury trial. Special Assistant United States Attorney Marti Sleister and Assistant United States Attorney Stephanie Rose represented the government. Attorneys Marlon Evans and Webb Wassmer represented Defendant, who was personally present. At the close of the government's case and the close of all evidence, Defendant made an oral motion for Judgment of Acquittal. The court denied the oral motion.

The jury found Defendant guilty of the crime charged in the Indictment. The jury found that the quantity of the controlled substance involved in the offense was "100 kilograms or more of a mixture or substance containing a detectable amount of marijuana." Interrogatory Form (docket no. 38), at 5.

2

On May 12, 2009, Defendant filed the Motions. On May 22, 2009, the government filed a Resistance to the Motion for Judgment of Acquittal (docket no. 41) and a Resistance to the Motion for New Trial (docket no. 42). Neither party requests oral argument, and the court finds oral argument is not necessary. The Motions are fully submitted and ready for decision.

## III. TRIAL EVIDENCE

### A. Trooper Klosterboer Stops Defendant's Van

On February 5, 2009, Iowa State Patrol Trooper Eric Vander Wiel ("Trooper Vander Wiel"), who has training and experience in traffic enforcement and drug interdiction, observed a white van traveling east on Interstate 80. Trooper Vander Wiel first noticed the van because it was traveling slower than most vehicles on I-80 and did not have a front license plate. Trooper Vander Wiel also noted that the van's "Tri-State Expedited Services" logo had been painted over a previous logo that was still visible, or ghosted, under the new logo. According to Trooper Vander Wiel, such ghosting suggests the vehicle may be cloned. A cloned vehicle is a vehicle modeled after a legitimate commercial vehicle. A cloned vehicle appears to be a commercial vehicle but is actually adapted for personal use.

Trooper Vander Wiel also noted that the van had an exceptionally tall CB antenna. The antenna ran down the side of the van and entered the van through the driver's side window. He stated that the antenna and installation looked unprofessional. In addition, the van had blinds similar to those used to protect children from the sun covering the rear windows. Trooper Vander Wiel stated that this was unusual. He testified that commercial vehicles typically have either professionally tinted windows or uncovered factory windows.

Trooper Vander Wiel investigated the van's license plate and found that the van was registered to an individual, Zenobia Monique Bailey, in Detroit, Michigan. He also investigated the United States Department of Transportation ("USDOT") number on the

side of the van and determined that Tri-State Expedited Services was an Ohio company.

Based on his suspicions regarding the legitimacy of the commercial nature of the van, Troop Vander Wiel contacted Iowa State Patrol Trooper Vinnie Klosterboer ("Trooper Klosterboer"), who has training and experience investigating illegitimate commercial vehicles and in drug interdiction. Trooper Klosterboer met Trooper Vander Wiel and observed the van. Trooper Klosterboer followed the van for approximately four miles before stopping it.

Trooper Klosterboer stopped the van at mile marker 215 on I-80, in the Northern District of Iowa.[1] Trooper Klosterboer intended to inspect the van for the proper markings and documents for a commercial vehicle and to determine whether the van was in compliance with the rules for commercial vehicles.

Defendant was the sole occupant of the van. Defendant produced an Illinois identification card, insurance card and registration form. Defendant admitted to Trooper Klosterboer that he did not have a valid driver's license. Trooper Klosterboer confirmed Defendant did not have a valid driver's license by running a driver's license check on Defendant. Defendant also produced pages of address stickers which Defendant represented was a bill of lading. Trooper Klosterboer testified that the stickers did not appear to be a professional bill of lading, which typically contain a complete break-down of a vehicle's cargo. Defendant told Trooper Klosterboer that the actual bill of lading had "flown" out of the van's window. Defendant told Trooper Klosterboer that he had worked for Tri-State Expedited Services for two weeks. He stated he was traveling from Colorado to Waterloo, Iowa, and then to Chicago, Illinois. However, Trooper Klosterboer found detailed directions for routes between Phoenix, Arizona, and Detroit, Michigan, in the van.

---

[1] Mile marker 215 is located in Iowa County, Iowa, which is part of the Northern District of Iowa.

At some point during the stop, Defendant called a woman and told her "they got me." Trooper Klosterboer found Defendant's statement to his alleged girlfriend to be suspicious because, at the time Defendant made the statement, Trooper Klosterboer had only discussed a standard commercial vehicle inspection. Defendant later told Trooper Klosterboer that the woman was his girlfriend, "Shervine Gore."

Defendant also called "Monique," a woman whom Defendant alleged to be his dispatcher. When Trooper Klosterboer asked the dispatcher for Defendant's bill of lading number, she did not seem to know what a bill of lading was. Trooper Vander Wiel later contacted Tri-State Expedited Services and learned that the van did not belong to Tri-State Expedited Services and that Defendant did not work for that company.

Trooper Klosterboer asked Defendant if he had a fire extinguisher and traffic triangles, as required for commercial vehicles. Defendant opened the van's side doors and began looking for these items. Trooper Klosterboer observed that the interior of the vehicle was cluttered with garbage, pillows, clothes and Defendant's personal items. Trooper Klosterboer testified that this was inconsistent with the appearance of other professional commercial vehicles. The entire back of the van was filled with unlabeled cardboard boxes. While Defendant was searching for the extinguisher and traffic triangles, one of the cardboard boxes tipped over and began to fall out of the van. Trooper Klosterboer grabbed the box and pushed it back into the van. Trooper Klosterboer noted that he did not hear any noise while handling the box, which was unusual, because Defendant told him he was hauling car parts. Trooper Klosterboer noted that during the inspection, Defendant seemed excited and rushed, which was also unusual because typically the drivers he stops are not as nervous.

### B. Troopers Klosterboer and Vander Wiel Inspect the Cargo

Trooper Klosterboer asked Defendant to move the van from the shoulder of I-80 to a safer area for further inspection. Trooper Klosterboer and Defendant drove their respective vehicles to a nearby gas station. At the gas station, Trooper Klosterboer told

Defendant that he wanted to inspect his cargo. Defendant opened the van's back doors and grabbed one of the boxes on top. Defendant opened the box, which was taped shut, and displayed two blocks covered in brown wood grain contact paper. Trooper Klosterboer believed the blocks contained marijuana so he called Trooper Vander Wiel for assistance.

Troopers Klosterboer and Vander Wiel inspected the blocks. Underneath the paper were several layers of cellophane and some type of oil or grease. The troopers were able to smell the marijuana when they opened the packaging. The troopers opened two more boxes, which also contained marijuana in the same type of packaging.

During this time, Defendant was sitting in Trooper Klosterboer's squad car. Unbeknownst to Defendant, a camera in the squad car videotaped his movement and recovered his statements. Trooper Klosterboer later viewed the squad car's internal video and observed that Defendant stated he had been caught and would serve time in prison.[2] He also stated that the troopers would find out about the Prior Conviction.

The van was transported to the Iowa County Jail, where Defendant was processed. The van was then transported to Des Moines for processing. In Des Moines, law enforcement removed and weighed each of the boxes and performed an inventory search of the van. Law enforcement found marijuana in each box. They recovered a total of 432.9 kilograms (954.41 pounds) of marijuana in the van. Law enforcement sent the boxes to the Iowa Division of Criminal Investigation ("DCI") lab to test for identifying prints. The DCI lab developed two latent palm prints on the packages; however, these prints did not match Defendant's prints.

### C. Agent Pettrone Interviews Defendant

Iowa Division of Narcotics Enforcement Agent Charles Pettrone ("Agent Pettrone") interviewed Defendant at the Iowa County Jail. Defendant repeatedly told Agent Pettrone

---

[2] It is unclear whether Defendant was talking on his cell phone to another person or simply muttering random thoughts to himself.

that he did not know that marijuana was in the van. Defendant stated that he merely did his job and did not ask questions.

Defendant stated that he first learned of the van when he received a text message on a friend's phone from a white male named "Billy." Defendant would not disclose his friend's identity. The text message instructed Defendant to go to the Coney Island restaurant parking lot in Detroit and locate the van. He understood that, inside the van, he would find a set of keys, $1000 in cash and written instructions on his destination. According to Defendant, the instructions directed him to Colorado Springs, Colorado, where he was to take the empty van to a specific car dealership. There he would meet someone, leave the van with this person and wait for further instructions. Defendant told Agent Pettrone that when he arrived in Colorado, he left the Colorado dealership for an hour and when he returned, someone told him to follow the directions back to Michigan. He stated that when he departed the dealership, someone had filled the van with the cardboard boxes. Defendant told Agent Pettrone that he was unemployed.

### D. Agent Pettrone's Investigation

Following his interview of Defendant, Agent Pettrone investigated whether Defendant had any criminal convictions. Agent Pettrone obtained a certified copy of the Prior Conviction.

Agent Pettrone also further investigated the maps and hand-written directions law enforcement found in the van. Specifically, Agent Pettrone investigated "the Q," where according to the directions, Defendant was to park, fill the van up with gas, and rent a room. Gov. Ex. 7C. A Quality Inn was located at the address. Agent Pettrone learned there was no record of Defendant staying at the Quality Inn in Tucson around January or February of 2009. However, records from the Quality Inn indicate Ms. Gore stayed at the Quality Inn numerous times after August 2008. The records also indicate Ms. Gore rented a room at the Quality Inn from January 31, 2009 to February 3, 2009, that is, two days before Defendant was stopped by Trooper Klosterboer in the Northern District of Iowa.

Agent Pettrone also testified generally about drug trafficking. He stated that marijuana is typically smoked using pipes, rolling papers or blunts.[3] Typically one to two grams of marijuana is smoked in a blunt or joint. He testified that marijuana is cheaper in the southwestern corner of the United States than in other areas. He explained that typically, a person transporting drug money travels west because sources of controlled substances are located in the western part of the United States. Conversely, a person transporting controlled substances typically travels east with the controlled substance. The person who transports the drugs or money is called a mule. Mules are common in the drug trafficking industry. Typically, mules are at the low end of a drug organization's hierarchy or are willing to perform the service for the drug organization in exchange for money. Based on his training and experience, Agent Pettrone believes that typically mules are aware that they are transporting drugs. He testified that generally, mules must know someone in the drug organization or be introduced to someone in the drug organization so that the drug organization can be certain of a mule's trustworthiness. In light of his experience, Agent Pettrone does not believe that a drug organization would have entrusted Defendant with almost one thousand pounds of marijuana if someone in the drug organization had not met Defendant or worked with him before.

## IV. MOTION FOR JUDGMENT OF ACQUITTAL

### A.   Legal Standard

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of

---

[3] A "blunt" is a "cigar whose wrapper has been emptied of tobacco and filled with marijuana." Oxford English Dictionary (2d ed. 1989) *available at* http://oed.com.

acquittal. Fed. R. Crim. P. 29(c). It is well-settled, however, that jury verdicts are not lightly overturned. *See, e.g.*, *United States v. Peneaux*, 432 F.3d 882, 889 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). The court must view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences. *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). The court must uphold the jury's verdict so long as a reasonable-minded jury could have found Defendant guilty beyond a reasonable doubt. *Id.* Moreover, the court "must uphold the jury's verdict even where evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Id.* (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). It is not the province of the court to weigh the evidence or evaluate the credibility of witnesses. *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004). That task is for the jury. *Id.*

### B. Analysis

Defendant moves for a judgment of acquittal on the ground that "there was insufficient evidence for the jury to find Defendant guilty of the offense charged . . . ." Motion for Judgment of Acquittal at 1. Specifically, Defendant argues that there was insufficient evidence to prove Defendant knew that he was in possession of marijuana.

In order to prove Defendant guilty of Possession with Intent to Distribute Marijuana, the government had to prove:

> *One*, on or about February 5, 2009, [Defendant] was in possession of a mixture or substance containing a detectable amount of marijuana;
>
> *Two*, [Defendant] knew that he was in possession of a mixture or substance containing a detectable amount of marijuana; and
>
> *Three*, [Defendant] intended to distribute some or all of a mixture or substance containing a detectable amount of marijuana to another person.

Final Jury Instructions (docket no. 36) at 15; Eighth Circuit Model Criminal Jury

Instruction 6.21.841A (2007); *accord United States v. Barrow*, 287 F.3d 733, 736 (8th Cir. 2002) ("The offense of possession with intent to distribute consists of two elements: knowing possession of [a controlled substance] and the intent to distribute it.").

The parties do not dispute the first element. Troopers found nearly 1000 pounds of marijuana in Defendant's van. Defendant was the sole occupant of the van. The DCI lab reports determined that the substance was marijuana.

Similarly, the parties do not dispute the third element. Defendant possessed 432.9 kilograms of marijuana. Agent Pettrone testified that marijuana is typically sold in packages containing one to two grams. The jury was instructed "that possession of a large quantity of marijuana supports an inference of an intent to distribute." Final Jury Instructions at 18; *United States v. Lopez*, 42 F.3d 463, 467-68 (8th Cir. 1994); *United States v. Ray*, 250 F.3d 596, 601 (8th Cir. 2001) ("The jury could infer that [the defendant] had the intent to distribute marijuana from the large quantity[(34 pounds)] he was found to have possessed."). "A large quantity of drugs, standing alone, is sufficient evidence of . . . intent to distribute." *Serrano-Lopez*, 366 F.3d 628 at 635.

Defendant only disputes the government's ability to prove the second element. Defendant argues that there was "no direct evidence that [Defendant] knew that he was in possession of marijuana." Brief in Support of Motion for Judgment of Acquittal (docket no. 39-2), at 1. The court is "cognizant of the inferential nature of [] proof of knowledge. But a defendant's knowledge generally is difficult to prove in any other way." *Serrano-Lopez*, 366 F.3d at 636. The court finds that a reasonable jury could have found Defendant knew he was in possession of marijuana for a number of reasons.

First, Defendant's actions indicate that he knew he was in possession of marijuana. Defendant was the sole occupant of the van. The photographs of the van's interior indicate the van was filled nearly to capacity with the boxes of marijuana. *See id.* at 635 (holding that the presence of a large quantity of drugs is evidence that a defendant knew drugs were

in the car). Defendant's personal items were scattered throughout the van and were next to and on top of the boxes of marijuana. Trooper Klosterboer described Defendant's demeanor as unusually rushed and nervous for a typical commercial vehicle stop.

Second, Defendant's statements indicate that he knew he was in possession of marijuana. Defendant told Agent Pettrone an unlikely story about someone named "Billy" who contacted one of Defendant's undisclosed friends about a van with its keys and $1000 inside of it. Defendant told Trooper Klosterboer he was traveling from Colorado and heading to Waterloo, Iowa, and then on to Chicago, Illinois. However, in the van, Trooper Klosterboer found detailed directions for other travel routes, namely, routes between Phoenix, Arizona, and Detroit, Michigan. Hotel records indicate Defendant's girlfriend, Ms. Gore, had rented a hotel room at one of the stops in the directions—the Quality Inn in Tucson, Arizona—numerous times since August 2008. These records indicate Ms. Gore had rented a room at the Quality Inn in Tucson two days before troopers stopped Defendant in the Northern District of Iowa. Defendant told Trooper Klosterboer that he had been employed by Tri-State Expedited Services for two weeks; however, Defendant told Agent Pettrone that he was unemployed. Furthermore, Tri-State Expedited Services confirmed that it did not employ Defendant.

Defendant told Trooper Klosterboer that he was hauling auto parts; however, Trooper Klosterboer noted that the boxes did not make noise as one would expect with boxes of auto parts. Furthermore, the directions found in the van did not direct Defendant to any of the car dealers listed on the documents Defendant presented as his bill of lading. In addition, there was no indication on any document or box as to which boxes went to which auto dealer.

Before Trooper Klosterboer discovered the marijuana, he overheard Defendant tell a person on the phone that he had been caught. Defendant also made statements while in the squad car that he had been caught and would serve time in prison. He expressed concern that the troopers would find out about the Prior Conviction. The jury was also

11

entitled to use evidence of this conviction in assessing Defendant's knowledge of the presence of marijuana.

Third, Agent Pettrone's expert testimony regarding the illegal drug trade supports a finding that Defendant knew he was in possession of marijuana. Agent Pettrone testified that, based on his training and experience, drug couriers are aware that they are transporting drugs. *See id.* ("Even if the drugs were not owned by the defendants, it is unlikely that the owner would place approximately $130,000 worth of cocaine in the hands of people who did not even know it was there."). He also testified that he does not believe a drug organization would have trusted Defendant with almost one thousand pounds of marijuana if it did not know Defendant. Accordingly, the court finds that there was sufficient evidence for the jury to find Defendant knew he was in possession of marijuana.

In light of the foregoing, the court finds that there was sufficient evidence for the jury to find Defendant guilty of the offense charged. *See id.* at 635-36 (holding that there was sufficient evidence to prove the defendants knowingly possessed cocaine with the intent to distribute, where there was a large quantity of cocaine in the vehicle and the defendants provided "not-too-believable" accounts for their travels). Accordingly, the court shall deny the Motion for Judgment of Acquittal.

## V. MOTION FOR NEW TRIAL

### A. Legal Standard

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court is granted broad discretion in considering a motion for a new trial. *Peters*, 462 F.3d at 957. A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (citation omitted). However, the court "should grant a new trial only if 'the evidence weighs heavily enough against the verdict that a miscarriage of justice may

have occurred.'" *Peters*, 462 F.3d at 957 (quoting *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987)).

A district court enjoys more latitude in granting new trials under Rule 33 than in granting motions for judgment of acquittal under Rule 29; however, "[m]otions for new trials based on the weight of the evidence are generally disfavored." *Campos*, 306 F.3d at 579. District courts "must exercise the Rule 33 authority 'sparingly and with caution.'" *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)); *see also* Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 553 (3d ed. 2004) (stating that granting a new trial under Rule 33 is an unusual remedy reserved for "exceptional cases in which the evidence preponderates heavily against the verdict").

The court's standard of review differs from the standard that is applied in the motion for judgment of acquittal.

> When a motion for new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is not whether the defendant should be acquitted outright, but only whether he should have a new trial. The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses. If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*Lincoln*, 630 F.2d at 1319.

### B.    Analysis

Defendant moves for a new trial on four grounds. The court considers each of these grounds, in turn.

### 1.    Whether the verdict is against the weight of the evidence

First, Defendant moves for a new trial on the ground that the verdict is against the weight of the evidence. In support of this argument, Defendant relies on the "reasons set

forth in [the] Motion for Judgment of Acquittal." Brief in Support of Motion for New Trial (docket no. 40-2) at 3. After independently weighing the evidence set forth in Part IV.B *supra*, the court finds that the verdict comports with the weight of the evidence. Accordingly, the court shall deny the Motion for New Trial on this ground.

### 2.     *Whether the use of "must" in the marshaling instruction was proper*

Second, Defendant moves for a new trial on the ground the court's use of the word "must" in Final Jury Instruction No. 14 was improper. Defendant asserts "[t]hat [the] [i]nstruction impermissibly informs the jury that it has no right of jury nullification." Brief in Support of Motion for New Trial at 4. In relevant part, Final Jury Instruction No. 14 reads: "If all of these elements have been proved beyond a reasonable doubt as to the defendant, then you must find the defendant guilty of the crime charged. Otherwise, you must find the defendant not guilty of this crime." Final Jury Instructions at 15.

In support of this position, Defendant cites *United States v. Drefke*, 707 F.2d 978, 982 (8th Cir. 1983) (per curiam). Defendant asserts that, "[j]ust like a defendant has no right to a jury nullification instruction . . . , the United States is not entitled to an instruction informing the jury that it has no right of nullification." Brief in Support of Motion for New Trial at 4. *Drefke* is not on point. In *Drefke*, the defendant requested an instruction "that would  have told the jury that it had a right to ignore the court's instructions on the law in the case." 707 F.2d at 982. The Eighth Circuit Court of Appeals held that "nullification instructions should not be allowed" and that "it is the right and duty of the judge to instruct the jury on the law and the jury's obligation to apply the law to the facts." *Id.*

The language used in Final Jury Instruction 14 was proper. The court followed the language provided in Eighth Circuit Model Criminal Jury Instructions 3.09[4] and

---

[4] In relevant part, Model Criminal Instruction 3.09 states: "If all of [these] [] elements have been proved beyond a reasonable doubt as to [the defendant] . . . then you must find [the defendant][] guilty of the crime charged . . . ; otherwise you must find [the

6.21.841A[5]. The court is mindful that "'the Model Instructions . . . are not binding on the district courts of this circuit, but are merely helpful suggestions to assist the district courts'" and that the instructions do not have the Eighth Circuit Court of Appeals's "automatic approval." *United States v. Evans*, 272 F.3d 1069, 1081 n.3 (8th Cir. 2001) (quoting *United States v. Norton*, 846 F.2d 521, 525 (8th Cir. 1988)). However, the court is inclined to use a Model Instruction when the Model Instruction accurately states the law. *See United States v. Hoffman*, 556 F.3d 871, 875 (8th Cir. 2009) (reviewing jury instruction to determine whether "jury instructions, taken as a whole, were accurate") (citing *United States v. Bishop*, 825 F.2d 1278, 1283 (8th Cir. 1987)). The instruction properly instructed the jury on its "obligation to apply the law to the facts." *Drefke*, 707 F.2d at 982. The instruction accurately instructed the jury on the law. *See United States v. James*, 172 F.3d 588, 592, 594 (8th Cir. 1999) (holding the district court did not err in instructing jury where district court instructed the jury that "[i]f the government has

---

defendant] not guilty of this crime . . . ."

[5]

> The crime of possession of [marijuana] with intent to distribute, as charged in [the Indictment], has three elements, which are:
>
> *One*, the defendant was in possession of [marijuana];
>
> *Two*, the defendant [knew that he was] [] in possession of [marijuana]; and
>
> *Three*, the defendant intended to distribute some or all of the [marijuana] to another person.
>
> (Insert paragraph describing Government's burden of proof; *see* Instruction 3.09, *supra*.)

Model Instruction 6.21.841A.

proved all [] of these essential elements beyond a reasonable doubt in respect to the count you are considering, you must find the defendant guilty of that count[]."). Accordingly, the court shall deny the Motion for New Trial on this ground.

### 3.     *Whether the court erred in refusing to instruct the jury regarding simple possession*

Third, Defendant moves for a new trial on the ground the court erred in refusing to instruct the jury regarding the lesser included crime of simple possession of marijuana. The Eighth Circuit Court of Appeals has explained that:

> [a] defendant is entitled to an instruction on a lesser included offense if all of these elements are present: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of the lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) there is mutuality, i.e., a charge may be demanded by either the prosecution or the defense.

*United States v. Gentry*, 555 F.3d 659, 667 (8th Cir. 2009) (citations omitted).  The parties do not dispute that Defendant has satisfied the first, second and fifth elements.

The parties dispute (1) the third element: that is, whether there is some evidence that would justify a conviction of simple possession and (2) the fourth element: that is, whether proof of Defendant's intent is sufficiently in dispute so that the jury may have found him innocent of possession with intent to distribute but guilty of simple possession.  In other words, the court must determine whether the jury "could have rationally found that [Defendant] only possessed the [marijuana], rather than possessed it with the intent to distribute, if given an instruction to consider the lesser charge."  *Id.* at 668.

Pursuant to *Gentry*, when evaluating whether a defendant is "entitled to a jury instruction on the lesser included offense of simple possession of [a controlled substance,]" courts must "look[] for evidence that the defendant is a user or may have intended to use

16

the controlled substance." *Id*. at 667-668. There was no evidence at trial indicating that Defendant intended to personally use 432.9 kilograms of marijuana. *See United States v. Santoyo-Torres*, 518 F.3d 620, 624 (8th Cir. 2008) (holding that "[a] lesser included offense instruction is not warranted in the absence of evidence that a large quantity of narcotics was for the defendant's personal use.") (citing *United States v. Parker*, 32 F.3d 395, 401 (8th Cir. 1994)); *accord Gentry*, 555 F.3d at 668 (holding that a lesser included offense instruction was warranted where the defendant possessed a small amount of methamphetamine).

The court finds that there was no evidence at trial that would justify a conviction of simple possession. There was no evidence, as Defendant suggests, that "[f]or all [Defendant] knew, the boxes could have contained car parts and a small amount of marijuana." Brief in Support of Motion for New Trial at 6. Similarly, there was no evidence Defendant possessed 432.9 kilograms of marijuana for personal use. Rather, the evidence at trial indicated Defendant knowingly possessed 432.9 grams with the intent to distribute. Similarly, Defendant's intent was not sufficiently in dispute so that the jury may have found him innocent of possession with intent to distribute but guilty of simple possession.

The court finds that it did not err in refusing to instruct the jury regarding simple possession. Accordingly, the court shall deny the Motion for New Trial on this ground.

### 4. *Whether the court erred in not instructing the jury on punishment or the mandatory minimum sentence*

Fourth, Defendant moves for a new trial on the ground that the court erred by (1) instructing the jury that it could not consider punishment and (2) refusing to instruct the jury that Defendant was subject to a mandatory minimum sentence. In support of this argument, Defendant cites *United States v. Polizzi*, 549 F. Supp. 2d 308 (S.D.N.Y. 2008), where a district court explained that a jury should be instructed on the applicable mandatory minimum sentences. Defendant properly notes that the decision of the district

court was vacated and remanded by the Second Circuit Court of Appeals in *United States v. Polouizzi*, 564 F.3d 142 (2d Cir. 2009), however Defendant encourages the court to rely on the district court's "extensive and well-reasoned analysis as to why a jury should be instructed on the applicable mandatory minimum, including discussion of the reasons why older [c]ircuit caselaw on this issue is no longer good law in light of recent United states Supreme Court precedent . . . ." Brief In Support of Motion for New Trial at 8.

Defendant's argument is well taken; however, the law in the Eighth Circuit Court of Appeals is clear that "it is proper for a court to caution the jury not to consider the possible punishment to be given a defendant." *United States v. Thomas*, 895 F.2d 1198, 1200 (8th Cir. 1990). The Eighth Circuit Court of Appeals has stated that "[t]he court need not instruct the jury that the defendant will receive a mandatory sentence if he or she is found guilty." *Id.* Furthermore:

> [S]entencing procedures or details regarding a defendant's possible punishment are irrelevant to the issues that a federal jury must decide. To inform a federal jury about a defendant's punishment would only introduce improper and confusing considerations before it.

*Id.*

The court finds that it did not err by instructing the jury that it could not consider Defendant's punishment or by refusing to instruct the jury that Defendant is subject to a mandatory minimum sentence. Accordingly, the court shall deny the Motion for New Trial on this ground.

### C. Conclusion

Defendant has not asserted a sufficient ground warranting a new trial. There has been no miscarriage of justice. Accordingly, the court shall deny the Motion for New Trial.

## VI. CONCLUSION

In light of the foregoing, the Motions (docket nos. 39 and 40) are **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 21st day of July, 2009

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA